Filed 10/14/14  P. v. Williams CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RODNEY CHE WILLIAMS,<br><br>    Defendant and Appellant. | H039393<br>(Santa Clara County<br>Super. Ct. No. C1121004) |

Defendant Rodney Che Williams appeals from a judgment of conviction entered after he pleaded no contest to the following offenses:  one count of failure to register as a sex offender (Pen. Code, § 290.011, subd. (b)),[1] one count of possession of marijuana for sale (Health & Saf. Code, § 11359), three counts of felon in possession of a firearm (former § 12021, subd. (a)(1)), and one count of possession of ammunition (former § 12316, subd. (b)).  Defendant also admitted that he had two prior strike convictions (§§ 667, subds. (b)-(i)/1170.12) and had served five prior prison terms (§ 667.5, subd. (b)).  The trial court sentenced defendant to 25 years to life.  On appeal, defendant contends that the trial court erred when it denied his request to strike one of his prior strike convictions.  We find no error and affirm the judgment.

---

[1]     All further unspecified statutory references are to the Penal Code.

# I.  Statement of Facts[2]

Defendant was required to register as a sex offender and had registered numerous times as a transient.  However, law enforcement discovered that defendant was not a transient, but had been living at a residence in San Jose for at least two years.  Defendant had also made other false statements on his registration form.  Though defendant was employed at the Improv Night Club and the owner of Newskool Tattoo Parlor, he did not list his employment on the form.  He also did not list his vehicles on the form.  On December 1, 2011, police arrested defendant at his residence and served a search warrant.

Defendant stated that he understood that he was required to register monthly, but his registration was late from July to October because his mother was ill.  He also admitted that he stays at his girlfriend's house "regularly," drives a Volkswagen Golf, and is employed.  He did not register his address because "he has side girlfriends" and did not want them to be able to locate each other.  When defendant was arrested, he had house and car keys.

The police conducted a search of defendant's residence and found three loaded pistols in a safe.  They also found ammunition and approximately 13 pounds of marijuana.  Defendant stated that he was holding the guns for a friend.  He also indicated that the bullets did not belong to him, but the marijuana did.  At the time, he claimed that the marijuana was for personal use.

Defendant told the probation officer that he was not registering his address because he did not want people checking the Megan's Law database and locating him.  He did not list his employer or vehicle on the registration form for the same reason.  Defendant was also in the process of obtaining custody of his 10-year-old daughter.

Defendant stated that one of the pistols was not operable and he was aware that he was prohibited from possessing firearms.  However, he did not think that he would be

---

[2]     The statement of facts is based on the probation report.

caught, because he never carried them. Defendant had purchased the marijuana from one dispensary and was in the process of selling it to another dispensary.

Regarding his prior strike convictions for rape, defendant claimed that the victim consented and he is not "violent person." He also stated that "this behavior was not indicative of his character," and thus he "never felt comfortable with his registration requirements as a sex offender."

The probation reports also summarized the facts of the prior strike convictions. Defendant told a 14-year-old girl that he would drive her home. Instead, he, two codefendants, and a juvenile took the girl to a remote area where they repeatedly raped her. While the sexual assaults were occurring, the others, who were watching and laughing, stood outside the vehicle. In 1991, defendant was sentenced to seven years for two separate violations of section 261, subdivision (a)(2).

## II. Discussion

Defendant contends that the trial court erred when it denied his request to strike one of his prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

## A. Background

Before defendant entered his plea, the trial court stated that the maximum sentence was 100 years to life plus five years. Both the trial court and the parties expected to hold a hearing on defendant's request to strike his prior strike convictions after the probation report was prepared.

The prosecutor filed opposition to what it anticipated would be defendant's request to dismiss the prior strike convictions. About two weeks later, defendant filed a request pursuant to *Romero*, *supra*, 13 Cal.4th 497.

At the hearing, the trial court stated that it had reviewed the filings, including the exhibits, as well as the probation report. The trial court then stated: "And, [defense counsel], this is your burden, so if you could go ahead. And you had people that came up from southern California and I wanted to make sure they had their voice." Several relatives and a friend then addressed the court on defendant's behalf.

Following argument by counsel, the trial court stated: "Okay. I just want to indicate a couple of things. These, on the three strike, are always the most difficult to decide. I am following the guidelines set out in the case of *People v. Williams* at 17 Cal.4th 148. [¶] The current offense involves a situation that occurred back on December 1st of 2011, a little over a year ago, where a search warrant was issued on the defendant's residence and where his suspected residence was. It was discovered that his registration was in violation. He had not bothered to do that for a while. There was nothing regarding his employment or automobile ownership. [¶] During the course of this search, there pistols and ammunition were found. And as [defense counsel] points out, they were, however, in a safe. 13 pounds of marijuana was recovered at the scene, and it was identified for personal use. [¶] The reason for the failure to provide the proper registration was to avoid, according to the defendant, other girlfriends from seeing where his residences were under Megan's law. [¶] The strikes, and there are two of them, are from a June 16th -- I'm sorry, 17th and 18th of 1990 where it was essentially a rape in concert where the defendant, at age 19, along with some associates, had picked up a 14-year-old at a carnival. She was taken into the east foothills where she was repeatedly sexually assaulted. The jury convicted the defendant of two counts, and the sentence was 7 years. [¶] The Court at looking at the background, character, and prospects of the defendant notes a couple of factors. First of all, I have no question whatsoever that he has employment. He worked at The Improv. He owns a tattoo parlor and has the ability to stay employed and make a gainful, honest living, if that's what he had [a] desire to do. [¶] I also have no question whatsoever from reading the letters that were filed with the

4

Court and hearing and seeing his family member and friends here in court that they honestly and truly believe that he should not be subjected to this particular law because he's a good person, according to them. [¶] In this particular case, I have had, I don't know how many, three strike cases that implicated 290 registration, and I've taken a view on these cases that there are essentially two types of violators: Those who, through negligence or omission, simply forget, who have done it in the past. They have registered in the past and just simply on one day forgot to do it. There are also other people who, as [the prosecutor] has pointed out, intentionally fly under the radar to avoid dete[c]tion for any number of reasons, all of them not good. And the defendant has indicated that that's what he does. [¶] Circumstantial evidence supports the fact that there was other activity going on in terms of 13 pounds of marijuana [and] the possession of the pistols and the ammunition. [¶] Much has been made of the fact that there is a single docket that the two strikes emerged from, and that is also true. It's also true that they're fairly old. [¶] I do not put much stock in either one of them. Each one of these acts that the defendant was committed or the defendant was convicted of by the jury manifest a separate intent on his part to violate this young woman; and to do it in a pac[k], I think, inherited the extra punishment that the law provides. [¶] What is more troubling, as far as the Court is concerned, is his criminal history. While he was out on bail on the rape in February '91, there was a sale of crack cocaine, transportation of cocaine, and out-on-bail enhancement, and he received 3 years/4 months consecutive to the rape charge. [¶] In 1997, after the three strikes law was enacted, he apparently -- or 1998, he suffered a violation of 290.2, another violation of registration where he received a 32-month sentence. At that point, the D.A.'s Office had acted through their committee to dispose of one of the strikes. [¶] [In] 1998, he violates parole and successfully completes parole in 2002. [¶] In 2003, during the course of an investigation for another 290, he is involved in a 148.10, resisting arrest with injury to the officer. The officer had ripped up his ACL in the pursuit of the defendant. The Court under Judge Murphy had ordered a 4-year term. It was reversed,

and the defendant received a 32-month sentence. [¶] In 2006, the defendant was charged with a possession of methamphetamine and a resisting arrest and received a 32-month top/bottom. [¶] At every stage of this defendant's criminal proceeding, somebody has rushed in to rescue him. It may have been excellent lawyering that he had in the past. It may have been a feeling on the part of the District Attorney's Office that they did not want to pursue on 290.2 and 11377 charges the extra strike that could have been plead[ed] as it was in this particular case. [¶] I view this as simply not understanding and appreciating your own circumstances. Mr. Williams, you are a walking three-strike the minute you were paroled from prison, and for whatever reasons, people did come in to rescue you. . . . [¶] Unfortunately, in this particular case, I think the end of the road is here. I am denying the motion to strike one or both of the prior convictions."

## B. Analysis

"The three strikes law is a comprehensive integrated sentencing scheme that applies to all cases coming within its terms. [Citation.]" (*People v. Casper* (2004) 33 Cal.4th 38, 41.) When an individual who has been convicted of a felony defense and has previously been convicted of two or more serious or violent felonies, he or she shall be sentenced to a minimum term of 25 years to life for each conviction. (§ 667, subd. (e)(2)(A)(ii).) Section 1385[3] authorizes trial courts to dismiss charged strike convictions in the "furtherance of justice." (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.)

"[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law . . . 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present

---

[3] Section 1385, subdivision (a) provides in relevant part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

6

felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not presently been convicted of one or more serious felonies and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).) A trial court's decision not to grant *Romero* relief constitutes an abuse of discretion only in extraordinary cases in which no reasonable person could disagree that the defendant fell outside the spirit of the three strikes law. (*Carmony*, at pp. 378-379.) There are also two circumstances in which a trial court's denial under *Romero* constitutes an abuse of discretion: "the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony*, at p. 378.)

Defendant contends that the trial court made three errors in denying his *Romero* request. The Attorney General argues that since he did not object to any of these alleged errors, he has forfeited these claims. (*People v. Scott* (1994) 9 Cal.4th 331, 351-353.) Even assuming that defendant's claims have not been forfeited, we reject them.

Defendant first argues that the trial court improperly found that defendant had the burden of showing that *Romero* relief should be granted.

As the California Supreme Court has explained: "A defendant has no right to make a motion, and the trial court has no obligation to make a ruling, under section 1385. But he or she does have the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading, and the court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.' [Citation.] And '[w]hen the balance falls clearly in favor of the defendant, a trial court not only may *but should* exercise the powers granted

7

to him by the Legislature and grant a dismissal in the interests of justice.' [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at p. 375.) Thus, a defendant who "invites" the trial court to exercise its statutory authority under section 1385 to strike a strike conviction does not incur a burden of producing evidence or of proof.

Here, after the trial court stated which documents it had reviewed prior to the hearing, it stated: "And, [defense counsel], this is your burden, so if you could go ahead. And you had people that came up from southern California and I wanted to make sure they had their voice." Defense counsel then stated that she had counseled them as to how to address the court and requested that they be allowed to speak at the podium in a narrative form. Several relatives and a friend then addressed the court on defendant's behalf. Based on this record, we are not convinced that the trial court was referring to either a defense burden of producing evidence or of proof. When taken in context, the trial court's reference to a defense burden may well have been to defense counsel's obligation to organize the various individuals who wanted to address the court on defendant's behalf. Given the ambiguity of the trial court's statement and the presumption that trial courts are aware of and follow the law (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114), we reject defendant's argument.

Noting that he had registered as a transient, defendant next contends that the trial court incorrectly relied on its erroneous belief that defendant "had not bothered" to register as a sex offender for some time. There is no merit to this contention.

The trial court stated: "It was discovered that his registration was in violation. He had not bothered to do that for a while. There was nothing regarding his employment or automobile ownership." Thus, when considered in context, the trial court was commenting on the fact that defendant had failed to register as required. The trial court later commented that there are individuals who "intentionally fly under the radar to avoid dete[c]tion for any number of reasons . . . . And the defendant has indicated that that's what he does." Based on what is at most an ambiguous comment, defendant has not met

his burden of demonstrating the existence of error on appeal. (*People v. Garza* (2005) 35 Cal.4th 866, 881.)

Defendant also contends that the trial court erroneously believed that defendant had been convicted of resisting arrest resulting in serious bodily injury to a peace officer (§ 148.10).

A defendant may be denied due process when a trial court relies on incorrect information in its sentencing decision. (*People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080.)

Here, the prosecutor provided a detailed summary of defendant's criminal history, including a May 2003 incident. During an investigation of defendant's compliance with his registration requirement, an officer was injured while chasing him. Defendant was charged with a violation of section 148.10, later pleaded no contest to the charge, and was sentenced to a four-year term. This court reversed the conviction on the ground that the trial court had misadvised defendant during plea proceedings. On remand, defendant pleaded guilty to an amended charge and the section 148.10 charge was dismissed. Defendant was then sentenced to 32 months in state prison. The trial court stated that it had read the filings and exhibits prior to the *Romero* hearing. During its summary of defendant's criminal history, the trial court stated: "In 2003, during the course of an investigation for another 290, he is involved in a 148.10, resisting arrest with injury to the officer. The officer had ripped up his ACL in the pursuit of the defendant. The Court under Judge Murphy had ordered a 4-year term. It was reversed, and the defendant received a 32-month sentence." Thus, though the trial court's comments did not include all the details in the prosecutor's memorandum, it did acknowledge that the section 148.10 charge was reversed on appeal and defendant was later sentenced to 32 months. Accordingly, the record does not support defendant's claim that the trial court relied on a felony offense of which he had not been convicted.

In sum, we conclude that defendant has failed to show that the trial court erred in denying his request for *Romero* relief.

## III.   Disposition

The judgment is affirmed.

_____

Mihara, J.

WE CONCUR:


_____

Premo, Acting P. J.


_____

Elia, J.